IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| Carolyn Drye-Durden and Leonard | ) | |
| Durden (both individually and as next | ) | |
| friends of Leonard Durden II) | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. H-04-2817 |
| | ) | |
| | ) | |
| Kaye Stripling and Houston Independent | ) | |
| School District | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM AND ORDER

Before the court is a motion for summary judgment brought by the Defendants, Kaye Stripling and Houston Independent School District (HISD) (collectively "the Defendants), to dismiss the claims of the Plaintiffs, Carolyn Drye-Durden and Leonard Durden (both individually and as next friends of Leonard Durden II).  Doc. 26.

The motion is GRANTED.

## BACKGROUND

Leonard Durden II (Leonard II) is an autistic child who attended HISD between 1991 and 2002.  When he was 14, Leonard II attended Camp We All, a program designed to prevent autistic children from regressing during the summer.  Leonard II returned home from Camp We All on July 18, 2002.  His mother found blood in his underwear. The injuries that Leonard II suffered precipitated investigations by several agencies into whether and by whom he was injured.  Investigators initially operated on the presumption

that Leonard II had been sodomized because a Dr. Delemos observed "markings on his arms, and … lacerations to his anus."  Doc. 32, Exh. G at Bates# SRS00023.  A chemist named Wess could not find any foreign matter in samples taken from Leonard II because the blood would have washed it away.  Id at Bates# SRS00020.  According to his mother, Leonard II has been "self-abusive, but he has never done anything to his rectum."  Doc. 32, Exh. J at 4.  Child Protective Services concluded in its intake report that Leonard II "was raped while attending a summer school program.  Although he is unable to verbally give details of the rape, there is physical evidence of the assault."  Doc. 32, Exh. J. However, no investigation ever determined who injured Leonard II and the Plaitniffs have never named any specific person as the rapist.

In their suit, the Plaintiffs alleged five causes of action against the Defendants and "HISD Rapist Doe(s)."  First, they alleged that the policies of the HISD violate the Americans with Disabilities Act (ADA) and the Rehabilitation Act.  Doc. 16, ¶¶23-24. Second, they alleged that the violations of the ADA and the Rehabilitation Act entitle them to recovery under 42 U.S.C. § 1983.  Id, ¶¶25-26.  Third, they alleged that the policies of the HISD constitute gender discrimination in violation of Title IX.  ¶¶27-28. Fourth, they alleged that the criminal acts of the unknown rapist constitute an intentional infliction of emotional distress, and other intentional torts.  Id., ¶30.  Fifth, they alleged a conspiracy to "cover-up" the rape of Leonard II.  Id., ¶31.

In their response to the motion for summary judgment, the Plaintiffs appear to have broadened their theory of how Leonard II received his injuries.  Having deposed a number of witnesses, the Plaintiffs no longer rely exclusively on the allegation that someone raped Leonard II.  Instead, they imply that Leonard II injured himself in the bathroom.  Doc. 32 at 5.  In the alternative, the Plaintiffs may be arguing that Dorsey

Nickerson (Nickerson), Leonard II's allegedly inadequately-trained caretaker, became frustrated at one of his outbursts and injured him while cleaning him after he defecated.

Although the Plaintiffs have not named Nickerson as a defendant, their arguments have made her background relevant to the case.  HISD has employed Nickerson in various capacities since 1982.  Doc. 32, Exh. A1.  She remained in the employ of HISD despite a guilty plea for defrauding the food stamp program in 1991.  Doc. 32, Exh. A2. Between 1991 and 1995, her personnel file also documents her inappropriate, and occasionally ill-tempered, reactions to various disputes with supervisors at a cafeteria. Doc. 32, Exh. A3-A7.  Despite these blemishes on her record, she was the primary caretaker of Leonard II on the last day of Camp We All and took him to the bathroom three times on his last day.  Doc. 32 at 10 and Doc. 32 at 16.  Nickerson explained that she took the toilet paper off of the roll and handed it to him.  Id.  She believed that he could use the toilet paper himself so long as someone else removed it from the roll.  Id.

The Plaintiffs also produced evidence that HISD did not care for its autistic children very well, at least according to Ron Taylor (Taylor), a Consumer Service Representative for the Harris County Mental Health and Mental Retardation Authority. Doc. 32 at 20-23.  In fact, Taylor once found a special education teacher sleeping in the classroom.  Id. at 20.  When Taylor raised concerns about the care that autistic children received, he found HISD unresponsive.  Id. at 21.  In contrast, Taylor found the parents of Leonard II quite adept at addressing his needs.  Id. at 22.  Ivy Chambers, an experienced supervisor from Child Protective Services, also concluded that it was unlikely that anything had happened to Leonard II at home, but that "Leonard [II] has been left with an inappropriate caregiver at school."  Id at 24.

## LEGAL ANALYSIS

The legal theories on which the Plaintiffs rely have been explained in only the most general terms.   On April 5, 2006, the Plaintiffs filed their response to the Defendants' motion for summary judgment.  Doc. 32.  The Plaintiffs filed this response after seeking and obtaining several orders postponing the trial or the date by which they were required to respond to the Defendants' motion.  See Docs. 25, 29, and 30.  The response to the motion for summary judgment contains almost 28 pages of facts and excerpts from deposition transcripts followed by a single, seven-line paragraph entitled "*Monell* Allegations" in which the Plaintiffs argue that the injuries that Leonard Durden II suffered were the inevitable consequence of the Defendants' official indifference to the needs and behaviors of autistic children.  No other portion of the response identifies which of the five legal theories articulated in the Amended Complaint the Plaintiffs believe remain viable.  Likewise, the Plaintiffs have not explained how any particular portion of the evidence submitted supports any specific element of any legal basis for recovery.  Without more extensive analysis of the law, the burden falls on the court to divine which theories of recovery the Plaintiffs are actually asserting.

A party moving for summary judgment must inform the court of the basis of the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding any of the essential

elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment because the substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The moving party need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).

If the moving party establishes the absence of any dispute of material fact, then the burden shifts to the opposing party to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The party opposing a motion for summary judgment may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256-157. The non-moving party may identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara*

*Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

### A.    No claims for intentional torts survive.

The Plaintiffs appear to have abandoned all claims that anyone can be liable for an intentional tort because they failed to name any particular individual as the rapist. Additionally, the Plaintiffs' current belief that Leonard II injured himself does not provide any basis for holding anyone liable for an intentional tort.

### B.    No evidence supports a violation of Title IX.

The Plaintiffs presented no evidence to support a claim under Title IX.  Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *Rosa H. v. San Elizario Independent School Dist.,* 106 F.3d 648, 652 (5th Cir. 1997).  Under Title IX, sex discrimination includes sexual harassment.  *See Franklin v. Gwinnett County Public Schools,* 503 U.S. 60 (1992) (citing *Meritor Sav. Bank v. Vinson,* 477 U.S. 57 (1986)).  However, the Plaintiffs seem to theorize that Leonard II injured himself despite his mother's statement to an investigator that he had never injured his own rectum.  Doc. 32, Exh. J at 4.  The mere fact that some reason to disbelieve Nickerson exists does not provide any reason to believe that she intentionally injured Leonard II in a fit of rage, frustrated by his inability to control himself.

Even assuming that the Plaintiffs could prove that Nickerson assaulted Leonard II, a "student cannot recover from the school district under Title IX unless the school district actually knew that there was a substantial risk that sexual abuse would occur." *Rosa H.,* 106 F.3d 652-53.  Thus, the Fifth Circuit requires some proof that the school

district knew of a perpetrator's sexual proclivities.  The case law provides no reason to hold a school district liable for a sexual assault committed by an employee when it knew only of the employee's disagreeable personality or even the employee's propensity for violence.  Title IX attempts to protect students from sexual discrimination and abuse, rather than from other forms of harassment.

In this case, the Plaintiffs established only that Nickerson showed a propensity for verbal altercations years before Leonard II was injured and in situations quite different from Camp We All.  Thus, HISD had reason to believe that Nickerson would assault Leonard II sexually only to the extent that it contemplated the possibility that Nickerson's possibly ill temper would result in physical violence and that her possibly violent personality would manifest itself in a sexual manner.  On the facts of this case, the Plaintiffs have not provided any reason to extend a school district's duty to speculate about an employee's possible behavior so far.  Accordingly, Title IX provides the Plaintiffs with no remedy against the currently-named Defendants.

### C.     No evidence of a conspiracy exists.

The Plaintiffs provided no evidence of a conspiracy.  A conspiracy requires a meeting of the minds.  *Martinez v. Martinez,* 553 S.W.2d 211 (Tex.Civ.App.–Tyler, 1977, no writ).  At best, the Plaintiffs have evidence that the employees of the HISD habitually ignored the needs of autistic children, not that they agreed to do so.

Furthermore, a conspiracy to "cover-up" another tort has not been argued as an independent basis for liability nor have the Plaintiffs suggested that the intransigence of witnesses inflicted any legally-compensable damages.  Accordingly, the Plaintiffs' claims for any type of conspiracy are dismissed for lack of evidence.

**D.      No evidence of discrimination against the disabled exists.**

The Plaintiffs provided no evidence of discrimination.   The ADA and Rehabilitation Act prohibit public schools from denying qualified individuals access to programs by reason of that person's disability.   *See* 42 U.S.C. § 12132.   They do not establish any particular level of care that autistic children must receive in public schools. In this case, the Plaintiffs have not identified any program to which either of the Defendants denied Leonard II access.   At most, the Plaintiffs presented evidence that HISD knowingly conducted an inadequate program for autistic children.   They have not explained how denying all autistic children access to competent caretakers constitutes discrimination against any particular child.   Likewise, the Plaintiffs have not explained how failing to meet the needs of extremely demanding children constitutes a denial, on the basis of disability alone, of access to a benefit that the children could otherwise access.   Accordingly, the Plaintiffs' claims for violations of the ADA and Rehabilitation Act are dismissed for lack of evidence.

Despite clear evidence that *someone* mistreated Leonard Durden II, the Plaintiffs have failed to raise any issue of material fact regarding the liability of any currently-named Defendants.   Accordingly, the motion for summary judgment is GRANTED. Doc. 26.

SIGNED at Houston, Texas, this 14th day of June, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE